# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONWIDE MUTUAL INSURANCE COMPANY,

    Plaintiff,

    v.

CPB INTERNATIONAL, INC.,

    Defendant.

CIVIL ACTION No. 3:06-CV-0363

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court is Plaintiff and counterclaim Defendant Nationwide Mutual Insurance Company ("Nationwide")'s motion for summary judgment, in which it requests that the Court grant it the declaratory judgment it seeks and that the Court dismiss Defendant and counterclaim Plaintiff CPB International, Inc., ("CPB")'s counterclaim for declaratory judgment as moot. Because the underlying claims against CPB are contractual in nature and therefore fail to meet the "occurrence" requirement for coverage and are specifically excluded by exclusion (b) of the policy, Nationwide's motion will be granted. The Court has jurisdiction over this matter based on diversity of citizenship. 28 U.S.C. § 1332.

## **BACKGROUND**

The facts of this case are well known to this Court and to the parties, and were discussed in more detail in the Court's Memorandum and Order of February 8, 2007 (Doc. 22.). To summarize, CPB is an importer of chondroitin sulfate sodium

("chondroitin"), a nutritional supplement made from animal cartilage which has been found beneficial to people who suffer from osteoarthritis. (Doc. 14-3 ¶¶ 53-55.)  CPB imports chondroitin manufactured in China and sells it to companies in the United States, which combine chondroitin and glucosamine, a nutritional supplement made from crab, lobster and shrimp shells, with other ingredients to manufacture nutritional tablets. (Doc. 14-3 ¶ 55.)  These tablets are then sold to retailers, which, in turn, sell the nutritional tablets under their own store labels to consumers. (*Id.*)

In April 2005, CPB filed suit against Rexall Sundown, Inc. ("Rexall") and a related corporation, NBTY, Inc. ("NBTY"), because Rexall had failed to pay CPB for a shipment of chondroitin.  Rexall and NBTY filed an Answer, New Matter and Counterclaim, alleging that the chondroitin that was shipped to it was deficient, of improper composition, and unusable for its intended purpose, and that the delivery of the material constituted a material breach of contract. (Doc. 1-1 ¶ 15; Doc. 1-2 ¶¶ 58-59.)  However, Rexall and NBTY did not discover that the chondroitin was deficient and of improper composition until after it had already combined it with glucosamine and other ingredients to form the nutritional tablets. (Doc. 14-3 ¶ 56.)  Rexall and NBTY sought repayment of the $760,000 it had furnished to CPB, as well as consequential damages. (Doc. 1-1 ¶ 16; Doc. 1-2 ¶ 89.)

CPB tendered the counterclaim made against it by Rexall and NBTY to Nationwide pursuant to CPB's policy of commercial liability insurance. (Doc. 1-1 ¶ 18; Doc. 11 ¶ 18.)  In response to CPB's tender of the counterclaim, Nationwide sent CPB two letters, both dated October 4, 2005. (Doc. 11 ¶ 61.)  In one letter, Nationwide advised CPB that it was reserving its right to deny commercial liability coverage of the counterclaim. (Doc. 11 ¶

62.) In the other, Nationwide stated that it had referred the counterclaim to the law firm of Swartz, Campbell & Detweiler ("Swartz Campbell") to undertake CPB's defense. (Doc. 11 ¶ 63.)

Thereafter, on February 16, 2006, Nationwide filed a Complaint in this Court seeking a Declaratory Judgment that it owed no duty to defend or indemnify CPB, pursuant to a policy of commercial liability insurance, for claims made against CPB by Rexall and NBTY for breach of contract. (Doc. 1-1.) In its Complaint for Declaratory Judgment, Nationwide asserts that it has no duty to defend or indemnify CPB because, *inter alia*, the breach of contract damages claimed by Rexall and NBTY were not caused by an "occurrence", a prerequisite to Nationwide affording coverage. (Doc. 1-1 ¶¶ 34-37.) Nationwide also argues that it owes no duty to defend or indemnify CPB because the claims asserted by Rexall and NBTY are subject to a provision in the insurance policy which excludes from coverage claims made against CPB which arose from CPB supplying a damaged or impaired product. (Doc. 1-1 ¶¶ 38-44.)

On May 8, 2006, CPB filed an Answer and Counterclaim, raising affirmative defenses and four counterclaims. (Doc. 11.) In my Memorandum and Order of January 8, 2007 (Doc. 22), I granted Nationwide's motion to dismiss three of those four counterclaims. (Doc. 13.) The only remaining counterclaim against Nationwide is Count I, in which CPB requests that the Court enter a judgment declaring that Nationwide does owe CPB a duty to defend it against the claims asserted by Rexall and NBTY (Doc. 11 ¶¶ 73-75.).

This Court also approved a stipulation between the parties dismissing NBTY and Rexall as parties (Doc. 19.). The remaining claims in this case are: (1) Nationwide's

request for a declaratory judgment that it does not have a contractual obligation to defend or indemnify CPB for the claims in the underlying state court action, and (2) CPB's counterclaim for a declaratory judgment that Nationwide does have those obligations. Nationwide now moves for summary judgment, requesting the Court declare that Nationwide has no duty to defend or indemnify CPB in the underlying action and dismiss CPB's counterclaim as moot (Doc. 24.).  Nationwide's motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

**DISCUSSION**

**I. General Principles**

The parties agree that their insurance contract (Ex. B to Compl., Doc. 1) ("the policy") is governed by Pennsylvania law.  Under Pennsylvania choice of law rules, an

insurance contract is governed by the law of the state in which the contract was made, *Travelers Indem. Co. v. Fantozzi ex rel. Fantozzi*, 825 F. Supp. 80, 84 (E.D. Pa. 1993) and the parties' policy was issued in Pennsylvania to a Pennsylvania corporation, Defendant CPB.  Under Pennsylvania law, an insurer's duty to defend is broader than its duty to indemnify, as the duty to defend arises whenever the allegations in the underlying complaint (that is, the complaint in the underlying litigation), taken as true and liberally construed in favor of the insured, state a claim to which the policy potentially applies. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987); *Biborosch v. Transamerica Ins. Co*., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)).  "Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim."  *Id.*  A court must determine whether an insurer has a duty to defend and indemnify in an underlying suit against the insured by looking only at the allegations in the complaint (or counterclaim) in the underlying litigation; it is error to look elsewhere. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).

The insured has the initial burden to establish that the claim for coverage falls within the terms of the insurance policy, but when an insurer's argument relies on a specific policy exclusion, the insurer bear the burden of proving that the exclusion applies. *Cont'l Cas. Co. v. County of Chester*, 244 F. Supp. 2d 403, 407 (E.D. Pa. 2003). Pennsylvania law also provides that "[p]olicy exclusions are strictly construed against the

insurer." *Id.* (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

## II. CPB's Commercial General Liability Policy

The question before this Court is whether Nationwide is obliged to defend and indemnify Defendant CPB under "Coverage A" of the Commercial General Liability ("CGL") part of CPB's policy with Nationwide, as CPB "makes no contention that Coverage B applies." (Def.'s Br. in Opp'n to Mot. for Summ. J., Doc. 30, at 2 n.1.)  Under Coverage A, Nationwide will pay sums for which CPB is liable due to applicable claims that CPB caused a third party "bodily injury" or "property damage." (Commercial General Liability Coverage Form [CGL Coverage Form], Ex. B to Compl. Doc. 1, at 1.)  For the purposes of this motion for summary judgment, Plaintiff Nationwide concedes that the underlying claim against CPB involves "property damage."  (*See* Pl.'s Br. in Supp. of Mot. for Summ. J., Doc. 26, at 8 n.2; *see also* Def.'s Br. in Opp'n, Doc. 30, at 10-12.)

The policy is applicable to property damage claims, however, only if the property damage "is caused by an 'occurrence.'"  (CGL Coverage Form, Ex. B to Compl. Doc. 1, at 1.)  The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 13.) The policy also excludes from coverage "contractual liability" for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  (*Id.* at 2.)  "This exclusion," the policy continues, "does not apply to liability for damages: (1) That the insured would have in the absence of the contract or agreement." (*Id.*)  Nationwide argues, *inter alia*, that the underlying claim is not covered

by the policy (1) because the damages alleged in that claim were not caused by an "occurrence," and (2) because the claim falls within the exclusion.

### III. The Occurrence Requirement

Nationwide argues that the damages were not caused by an "occurrence," citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, which also interpreted a Commercial General Liability policy that covered only those allegations of property damage caused by an "occurrence," and which also defined occurrence as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." *See* 908 A.2d 888, 892, 897 (Pa. 2006). The court in *Kvaerner* consulted the dictionary definition of "accident" to determine its ordinary usage and concluded that "the key term in the ordinary definition of 'accident' is 'unexpected.'" *Id.* at 898. "This definition," the court continued, "implies a degree of fortuity that is not present in a claim for faulty workmanship." *Id.*

#### A. Contract / Tort Distinction

A claim of faulty workmanship, like that in *Kvaerner*, alleges breach of contract, rather than a tort, and this distinction, the *Kvaerner* court noted, matters when determining whether an underlying claim is an "occurrence" within the meaning of a CGL policy. The court, when interpreting contract language identical to that here, cited a "seminal law review article" which explained that the coverage CGL policies are designed to provide is "for tort liability for physical damages to others and not for contractual liability

of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." *Id.* at 899 n.10 (quoting Henderson, *Insurance Protection for Products Liability and Completed Operations: What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971)).

The court also cited a number of cases from the Pennsylvania Superior Court, leading Nationwide to submit that "the Pennsylvania Superior Court has consistently held that a claim based on a breach of contract is not an accident or occurrence contemplated or covered by the provisions of a general liability policy." (Pl.'s Reply Br. in Supp. of Mot. for Summ. J., Doc. 31, at 5.)  For instance, the *Kvaerner* court cited *Snyder Heating v. Pa. Mfrs. Assoc. Ins. Co.*, 715 A.2d 483 (Pa. Super. Ct. 1998) for having held that "there was no coverage under the language of the CGL policy because the complaint set forth solely claims for breach of contract."  *See* 908 A.2d at 898.  In *Snyder*, where the relevant policy language was the same as in *Kvaerner* and in the present case, *see id.*, the court stated that "[p]rovisions of a general liability policy provide coverage ... if the insured work or product *actively malfunctions*, causing injury to an individual or damage to another's property."  715 A.2d at 487 (quoting *Ryan Homes Inc. v. Home Indem. Co.*, 647 A.2d 939, 942 (Pa. Super. Ct. 1994)).  Likewise, in *Freestone v. New England Log Homes, Inc.*, the superior court stated that "[a]s to the breach of contract and breach of warranty claims, it is clear that Pennsylvania law does not recognize the applicability of a general liability policy to such causes of action."  819 A.2d 550, 553 (Pa. Super. Ct. 2003).  This rule was laid out in *Redevelopment Authority of Cambria County v. International Insurance Co.*, 685 A.2d 581 (Pa. Super. Ct. 1996), *app. denied*, 695 A.2d 787 (PA.

1997), which interpreted a commercial general liability policy that covered only damages arising out of an "occurrence." The court in *Redevelopment* held that "[o]ur review of the applicable case law from this and other jurisdictions compels the conclusion that Erie correctly asserts that it has no duty to defend or indemnify the Authority *since the underlying suit arises out of a breach of contract which is not an accident or occurrence contemplated or covered by the provisions of a general liability insurance policy.*" *Id.* at 589 (emphasis added).

Judge McClure of the Middle District of Pennsylvania also recognized this rule of Pennsylvania law, in *Keystone Filler & Manufacturing Co. v. American Mining Insurance Co.* 179 F. Supp. 2d 432, 440 (2002), *aff'd*, 55 Fed. Appx. 600 (3d Cir. 2002) ("The rule in *Redevelopment Authority* – that there is no 'occurrence' if the underlying claim is one merely for breach-of-contract – has been followed by numerous state and federal courts sitting in Pennsylvania.").

**B. CPB's Arguments Regarding Contract/Tort Distinction**

CPB argues that the contract/tort distinction is not dispositive of the question whether the underlying claim arose from an "occurrence." (*See* Pl.'s Br. in Opp'n., Doc. 30, at 16-20.) In support, CPB points to certain definitions in the policy. For instance, CPB argues that the underlying claim against it involves property that comes within the policy definition of "impaired property," that is, property, other than the insured's own product or work, that cannot be used or is less useful either (a) because it incorporates the insured's product, known or thought to be defective, deficient, inadequate, or

10

dangerous or (b) because the insured failed to fulfill the terms of a contract.  (*See* CPB Coverage Form, Ex. B to Compl., Doc. 1, at 12.)  The term "impaired property," as CPB notes, is used in exclusion (m) of the policy, which states that damage to impaired property is not covered if it arose out of a defect, deficiency, inadequacy, or dangerous condition in the insured's product or if it resulted from a delay or failure by the insured to perform a contract in accordance with its terms.  (*Id.* at 4.)  From this, CPB argues that "[i]f the insuring agreement did not admit coverage for such occurrences, then such exclusionary language would be surplusage."  (Def.'s Br. in Opp'n, Doc. 30, at 18.)  But the fact that the underlying claims against CPB – allegations of property damage stemming from CPB's material breach of a contract by providing a deficient product – fit squarely within exclusion (m), moots CPB's argument.  Additionally, the exception to the exclusion, to which CPB points, which provides that exclusion (m) "does not apply to the loss of use of other property arising out of sudden and accidental physical injury to [the insured's] product or ... work after it has been put to its intended use," is irrelevant to the claim against CPB.  Furthermore, that exception clarifies that *accidental* injury is covered; in other words, exclusion (m) makes clear that property damage arising out of an "occurrence," is covered, but damage arising out of the insured's provision of a deficient product or failure to comply with a contract is not covered.  Nothing in exclusion (m) or the definition of "impaired property" used therein supports CPB's argument that the term "occurrence" includes contract-based claims.

CPB also argues that "[t]he definition of products hazard in the policy includes coverage for 'bodily injury' or 'property damage' due to an alleged breach of warranty." (Def.'s Br. in Opp'n, Doc. 30, at 17.)  This argument also fails.  To begin, the term

11

"products hazard" is not defined in the policy, but CPB was likely referring to exclusion (j)(6), where the policy excludes from coverage damage to property "that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," and goes on to say that "this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'" (CGL Coverage Form, Ex. B to Compl., Doc. 1, at 4.)  The definition of "Products – completed operations hazard," that is, the scope of damage not specifically excluded by exclusion (j)(6), includes damage occurring away from the insured's premises and arising out of the insured's product or work, with certain exceptions not applicable here.  (*See id.* at 13.)  By arguing that "the products hazard coverage specifically extends to the insured's liability ... arising from a breach of warranty," CPB may be referring to the fact that the definitions of "product" and "work" include warranties CPB makes.  (*See id.* at 14; Def.'s Br. in Opp'n, Doc. 30, Ex. B to Compl., Doc. 1, at 17.)  Thus, CPB likely means to argue that NBTY and Rexall's allegations of damage to their property, which occurred away from CPB's premises and arose out of CPB's product or work (including warranties) are not excluded from coverage under exclusion (j)(6).  That the allegations against CPB are not specifically excluded by exclusion (j)(6) is in fact the most that CPB's argument could show; even if that were true, it would not follow that the definition of products hazard "specifically extends" CPB's liability to claims of damage arising from breach of warranty.  CPB's arguments based on definitions of words used in the policy's exclusions does not illuminate the definition of "occurrence," nor does it change the fact that the policy applies only to claims of damage resulting from "occurrences."

Similarly, Plaintiff's reliance on *Imperial Casualty & Indemnity Co. v. High Concrete*

*Structures, Inc.,* 858 F.2d 128 (3d Cir. 1988), for the proposition that "coverage issues do not turn on 'the distinction between tort and contract liability but a specific insurance contract that must be interpreted according to well established rules of construction,'" is misplaced.  (*See* Def.'s Br. in Opp'n, Doc. 30, Ex. B to Compl., Doc. 1, at 20 (quoting *Imperial Cas.*, 858 F.2d at 134 n.7).  The court was discussing not "coverage issues" generally, but instead stated that "[w]hat is at issue *here* ... is not the distinction between tort and contract liability..." *Imperial Cas.*, 858 F.2d at 134 n.7 (emphasis added).  Not at issue *in that case* was the existence of an "occurrence;" the parties agreed that the claim arose from an occurrence.  *Id*. at 134.  And although, taking into account the parties' agreement on that issue and other factors, that court did find a breach of warranty claim included in a commercial general liability policy, it did so without weighing in on the question of what constitutes an occurrence, and without the benefit of guidance from later Pennsylvania case law, beginning with the 1996 *Redevelopment Authority* case, that further clarified that an "occurrence," as defined in commercial general liability policies, does not include a breach of a contract.

### C. The Claims Against CPB are Contractual in Nature

Under Pennsylvania law:

the important difference between contract and tort actions is that the latter lie from a breach of duties imposed by law as a matter of social policy while the former lie from the breach of the duties imposed by mutual consensus agreements between the particular individuals.

*Snyder Heating*, 715 A.2d at 487 (citing *Phico Ins. Co. v. Presbyterian Med. Serv.*, 663 A.2d 753, 757 (Pa. Super. Ct. 1995)).  The CGL policy itself also states that tort liability

"means the liability that would be imposed by law in the absence of any contract or agreement." (CGL Coverage Form, Ex. B to Compl. Doc. 1, at 12.)  Furthermore, under the "gist of the action doctrine," if a party alleges that another "committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Freestone*, 819 A.2d at 554.  The doctrine, "as a practical matter ... precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id.*  In *Freestone*, the court found that any negligence alleged against the defendant was "actually the failure to live up to a contract," and it reached this conclusion because "any duty of care owed to the Freestones by NELHI was contractual in nature." *Id.* at 553-54.  These authorities make clear that a claim is contractual if the duty allegedly breached was a duty owed pursuant to a contract.

NBTY and Rexall's claim in the underlying suit alleges that CPB materially breached the parties' contract and sought to recover the amount NBTY and Rexall had already paid CPB as well as consequential damages to their own materials that were rendered useless once combined with the allegedly deficient Chondroitin from CPB. (Defs. NBTY and Rexall's Answer, New Matter and Counterclaim, Doc. 1-2 ¶¶ 65-89.) Although the Pennsylvania Supreme Court, in the *Kvaerner* case upon which Plaintiffs here rely, stated that "[t]he underlying suit in this case avers only property damage from poor workmanship *to the work product itself*," *Id.* at 900 (emphasis added), the distinction between damage to CPB's own product and damages to others' property caused by deficiency in CPB's product is irrelevant here.  Both the allegation that CPB did not

14

provide the material it was obligated to under the contract, and the allegation that such breach caused consequential damage to NBTY and Rexall's property are claims based on duties CPB owed NBTY and Rexall only by virtue of having entered into a contract with them.  As such, the underlying claims are based in contract, and do not arise from covered "occurrences."

As stated above, the insured has the initial burden to establish that the claim for coverage falls within the terms of the insurance policy.  *Cont'l Cas. Co.*, 244 F. Supp. 2d at 407.  Because the underlying claims against CPB are contractual in nature and because the "occurrence" requirement of Coverage A does not include contractual claims, CPB has not met that burden, and Nationwide has no duty to defend or indemnify CPB.

**IV. Exclusion of Contractual Liability**

As the underlying claim is contractual and therefore does not meet the "occurrence" requirement for coverage under the CGL policy, there is no need to consider the exclusions to coverage.  It suffices to note that even if the underlying claim did meet the "occurrence" requirement, Nationwide has presented sufficient evidence to meet its burden of proving that the claims would still be excluded from coverage.  The policy, in exclusion (b), excludes from coverage "contractual liability" for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  (CGL Coverage Form, Ex. B to Compl. Doc. 1, at 2.)  The exclusion contains an exception: it does not apply to liability for damages "[t]hat the insured would have in the absence of the contract or agreement."  (*Id.*)  As the above

discussion of tort and contract claims makes clear, this language means that the policy the does cover tort-based claims. Exclusion (b) is simply further clarification in the policy that contract-based claims are not covered.

CPB argues, however, that the exclusionary language does not preclude coverage for all contractual liability, but only for secondary liability that CPB assumes in a contract, that is, for the liability of a third party, which, by contract, CPB agrees to indemnify or hold harmless. (*See* Pl.'s Br. in Opp'n, Doc. 30, at 20-21.) To read the phrase "obligated to pay damages by reason of the assumption of liability in a contract or agreement" otherwise, CPB argues, would be to render the word "assumption" superfluous. (*Id.*) However, in the *Snyder* case, which the Supreme Court of Pennsylvania cited with approval in its recent *Kvaerner* decision, the insurance policy used the exact same exclusionary language used in CPB's Nationwide policy: "This insurance does not apply to: ... '[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of *the assumption of liability* in a contract or agreement." *See Snyder*, 715 A.2d at 485 (emphasis added). That language was understood by the court in *Snyder* to preclude coverage for claims "sounding in breach of contract." *See id.* at 487-88 (stating that the insurer argued that it "denied coverage based upon the fact that the policy excluded coverage for breach of contract allegations" and proceeding to discuss why "[although] Snyder attempts to cloak the School District's allegations in tortious principles, the claims asserted against the heating company are clearly those sounding in breach of contract," and concluding that the insurance company, "therefore, has no duty to defend Snyder").

16

In light of the *Snyder* court's reading of the exact same language, I conclude that the exclusionary language here means that the policy does not cover any contract-based claims. Therefore, even if the claims against CPB were not excluded from coverage by the "occurrence" requirement, they are certainly excluded from coverage under exclusion (b).

## CONCLUSION

Because the underlying claims against CPB are contractual in nature and therefore fail to meet the "occurrence" requirement for coverage and are specifically excluded by exclusion (b) of the policy, I will grant Plaintiff Nationwide's motion for summary judgment on its request for a declaratory judgment that it does not owe CPB a duty to defend or indemnify in the underlying litigation.

An appropriate order follows.

November 21, 2007  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONWIDE MUTUAL INSURANCE COMPANY,

    Plaintiff

        v.

CPB INTERNATIONAL, INC.,

    Defendant.

CIVIL ACTION No. 3:06-CV-0363

(JUDGE CAPUTO)

## ORDER

Now, this  21st  day of November, 2007, it is **HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED**.

                         /s/ A. Richard Caputo
                         A. Richard Caputo
                         United States District Judge